The first case this morning is Lightcubes v. Northern Light. Mr. Boundy. Good morning. May it please the Court, I am Ross Boundy of Davis Wright Tremaine, and with me here at the Council table is Kevin Anderson of Wiley Green. The questions that the Court has asked us to consider are really twin variants of a common theme. Assuming that the plaintiff is unable to prove importation under either the copyright or patent statute, does that amount to a lack of subject matter jurisdiction, such that all decisions in the trial court were void ab initio, or is it rather a failure to establish an essential element of the cause of action, and therefore an adjudication on the merits? Let me say at the outset that this is not an easy question. It's almost a philosophical question that has bedeviled many of the courts for a long time. Well, it's more of a philosophical question than a subject question, isn't it? It is, and I simply say that to say that I am relieved to note that we both filed a motion to dismiss for failure to state a cause of action under subject matter jurisdiction, and a motion for JMYL for that same reason, that they had failed to establish it. But if it's not a subject matter jurisdiction issue, then it's really whether or not the cause of action was established. Yes, I agree. And it's a factual determination. It's a factual determination, but in this case, our Rule 50 motion indicated that there was no set of facts under which they could possibly establish importation, because there were no actions that took place in the United States. And I think that the court, recognizing the reality that there had been no evidence of any offer to sell or sale, found the only possible close hook upon which to hang a cause of action for direct infringement by allowing the plaintiff to argue importation. But it could turn on something other than direct infringement, could it not? As far as if the question is jurisdictional at all. There was no cause of action pled for anything other than direct infringement under 271A. The jury was not instructed, there was no argument, and there was frankly no evidence of anything other than the slim read or argument for importation. I think that this court has made it very clear. Why is it slim? Not because the statute provides for importation. So where is the slimness? Well, I would slim suggest that there may have been a read, and I don't want to suggest that at all. The point of the matter is that there was no evidence, no set of facts, that could have been argued to constitute importation. And that's the reason why 10 months after trial... Importation by this party. Yes, importation by this party. It's obviously importation. Well, importation in the sense that goods were eventually brought into the country by somebody. But their argument, stretching importation beyond its reasonable bounds, is that if goods end up in the United States, then my client is an importer. And that's where we part company rather dramatically. Yes, goods were brought into the United States. Their argument is a bit more focused than that. I'm sorry? Their argument is a bit more focused than that. Not much. With all respect, Your Honor, I think their argument is that there was a website, a passive website, a website which had a specific legend on it that said, You cannot order off this website. We do not offer e-commerce. You must call Canada and place an order in Canada where an operator would answer the phone, take your order, then ask where you wanted it sent. And if you said Buenos Aires, if you said Argentina, if you said Salt Lake City, Utah, they would then say fine. They'd look it up, and they'd say the cost for that freight charge will be X. You would then give the Canadian seller the number of your visa card. That visa card would be charged in Canada, and the goods would be shipped at the purchaser's direction and control any place in the world. But the seller knew that they were going to the U.S., though, when they made the sale. The seller knew that the purchaser had requested they be sent to specific locations all around the world, including the United States. But should it be determinative of the way that the freight charge is imposed, whether or not it's free on board or whether freight collect is made at the other end? That's a technicality that really is just a technicality in and of itself. Is there an intent there to really sell within the United States when you charge for the freight going to the U.S.? No, I think not. I think the court's ROTEC decision speaks directly to that. You look to commercial standards of normal contracting. And in this case, it's pretty clear from the reference on the website. It's clear, indeed, in view of the actions that the parties took, that everyone intended that this was a transaction that took place in Canada. But in ROTEC, there was an intermediate sale to a party outside of the United States. Yes, but the court, in dealing specifically with the question of whether or not there had been sufficient jurisdictional context with the United States to constitute an infringement under an offer for sale. A sale within the United States. Yes. I have trouble really relying very much on that analogy because in ROTEC, nothing really entered the United States except the physical transaction. The use of the product, the asserted infringement, actual infringement was outside of the United States. I'm not suggesting that the facts in ROTEC are absolutely identical. I was responding to the question of do you abide by commercial standards of law of contract incitus, et cetera, and FOB considerations. And this court in ROTEC spoke very decisively to that point in saying, yes, you do. That's exactly what you look at. It would be a bizarre world if somebody merely by setting up an informational-only website in Scandinavia, for example, would therefore be subject to jurisdiction in the United States simply because somebody using that, almost like a telephone book in a library, using that informational website to find the telephone number calls the Scandinavian country and said, I'd like to order ABC product, which doesn't infringe in Scandinavia. And once it's shipped to the United States saying, aha, you have now offered for sale by virtue of the website, sold by virtue of this transaction, or indeed imported. I think that stretches importation beyond its reasonable bounds. Let me ask, were there any other points you wanted to take up in your argument in chief, or else we can continue with this? There are, Your Honor. I would like to direct the court's attention to the willfulness issue. I'd just say in passing very quickly that in view of the court's decision in CTAC, I think it would be appropriate, sorry, Seagate Technologies, I think it would be appropriate to send this case back for reconsideration of the willfulness determination. And then lastly, I would significantly like to direct the court's attention to the infringement issue, which I think is very, very significant here. I hope that the court found that as intriguing and frankly as provocative as the jurisdiction merits question. This simple fact is that a narrow patent, which was granted over prior art, which included everything contained in the device in question, or the patent in suit, that is to say a light, a cartridge, a battery, and a filler. And the prior art was replete with the evidence of prior fillers that included water. So this individual got a patent by persuading the patent office that he was the first to come up with a refrigerant in his cube. The first to come up with an idea that you could use something akin to blue ice, a commercial refrigerant that was, he used the language, adapted to retain heat or cold. So he gave examples of what a filler adapted to retain heat or cold would be, and he included in that, he said, it would be examples of something that was a commercially reusable ice pack or heating pad. And then at trial he found an expert to say that if you put the cube in the freezer and you put it down to freezing temperature, took it out, put it in a glass of water, surprise, it would eventually come to room temperature. There was no control in the expert's testing. There was no comparison with other known refrigerants. And notably, this expert at trial was specifically asked, did you find any unique properties in this polymer? Everybody agreed what the substance was. Did you find any unique properties with this particular polymer that made it suitable for the specific use of retaining heat or cold? That was the court's markman consideration. His answer speaks volumes. He said, I didn't look for it, and I didn't find any. I didn't see any. I didn't notice any. His tests showed only that the cube and the filler could be frozen, and if you removed them, they would rise above freezing temperatures. My kids would say, duh, big surprise that that would happen. In fact, the timing of it is quite remarkable. He found that within 120 to 150 seconds, that's two to three minutes, it rose above freezing temperature. And that in the case of his second and third tests, he found that in 30 seconds they had gone above freezing. So we actually asked him a question. We said, would a sandwich exhibit a different phenomenon? You can't make up a question like this. And his answer was, no, I don't suspect it would. This was at the jury trial? This was at the trial. You presented contrary evidence? We did. We did indeed. And this expert had a PhD, and he said that when being asked a very leading question, well, would you say that this product exhibits the ability to retain heat or cold? He answered yes. Now, where did the jury go wrong? What is the reversible issue here? The reversible error is the court should not have allowed the jury verdict to stand in view of the fact that this was jump science in the worst degree. This was an example of no science at all. This is an example of an individual who simply said what we all intuitively know, that if you put something in the freezer, you take it out, it'll get warm. Did you have a Daubert hearing? What did you present? We did not have a Daubert hearing. We raised the Daubert issue at trial with the court. And I believe the court should have, therefore, granted our JAMAL motion, judgment as a matter of law, on that specific issue. But wasn't the jury entitled to rely on that testimony? You questioned the testimony, but they were still entitled to rely upon it. I think that there reaches a point where the jury should have been carefully controlled by the judge. The judge should have understood what the jury did not. Would you request such an instruction? Yes. Jury should ignore their expert's testimony? Well, that would be a strange instruction. No, we didn't specifically request that. But you're asking us to do that. No, I'm asking you to say that there are no set of facts, no cognizable facts, that would allow the jury verdict to stand in view of the undisputed science. We're not talking about disputed science here. We're talking about an individual who simply said, and I repeat, if you put something in the freezer, it will freeze, you take it out, it will get cold. We all know that. As I somehow tried to be humorous in my brief, mentioned that rock, paper, scissors and my thumb will exhibit that same phenomenon. But that would not, nobody in their right mind would argue that that's sufficient to suggest that the filler in this artificial ice cube is adapted to retain heat or cold. Maybe the jury used its common sense. Well, in this case, I would say no. The jury did not use its common sense. The jury was persuaded and impressed by the fact that this fellow was a PhD. I think they were impressed by the fact that the judge let him testify. And I think that the jury was unduly persuaded that my client, going back to the earlier issues, was a Canadian who was importing products, himself importing into Canada, products that were made overseas. And I think on the basis of that, the whole proceeding was colored. Do you think the whole issue was biased because of that? I do. I do. From having personally witnessed that, I think my opponent was able to make great hay with the fact that my client was an importer of cheap Asian products. And I think that, frankly, whether we're talking about subject matter jurisdiction or we're talking about failure to establish an essential element of your cause of action, or we're talking about junk science, I think even foreigners who import Asian products ought to be entitled to the benefit of reasoned law and a proper instruction by the court. There's a copyright claim in the case also. There is. And I don't think the copyright analysis, frankly, is much different than the patent analysis. In fact, both parties have so indicated in their comments to the court. The Eighth Circuit – and I think it's absolutely correct that you follow the Eighth Circuit law with respect to importation. Were there any cases in the Eighth Circuit? I'm sorry?  I've been unable to find none. We've been scrambling since Thursday when we got your letter, and we don't find any cases that would bear on that. There was a non-presidential case that was issued by the Eighth Circuit on the issue. I'm afraid I didn't find it, if that's the case. Now we're using up your rebuttal time. Shall we say what's left? Let's do it. Okay. Mr. Telcher. May it please the Court, Rudy Telcher, the law firm of Harness, Dickey & Pierce, on behalf of Appellee Lightcubes. In looking at the record, I came into this appellate argument thinking that there wasn't much reversible there, and I prepared to argue all the points. When I got the Court's directive on the issue that was on the Court's mind, the two issues, those issues actually struck me as something that made this appellate argument, this decision, a bit more important. Because the issue of whether this is subject matter jurisdiction is something that applies not only to this case but to all cases. And as this case aptly demonstrates, if it's subject matter jurisdiction, it can be raised, an issue like this can be raised on the third day of trial. It can be raised throughout the litigation, as the Court is well aware. Please get to the issue. With that in mind, I've looked at Arbaugh, which is a Supreme Court case, and as best I can tell, it binds us. If you look at page 516 of that decision, Arbaugh states that unless Congress says in the statute that an element is jurisdictional, it's not jurisdictional. The Supreme Court goes on to say in Arbaugh that, in fact, it's a bright-line test that ought to be applied that way. So the Supreme Court, as best I can tell, has now issued the mandate, unless Congress has said in the statute that an element is jurisdictional, it's not jurisdictional. That's what the Supreme Court decision in Arbaugh states. Now, in looking – and this Court's going to be, I think, well aware of its own decisions. I've looked at the Federal Circuit's decisions in this area under the patent, in the patent arena, and it doesn't appear that the Federal Circuit has treated it as a jurisdictional issue. In ROTAC, for example, the Court went on to say that we must analyze whether defendants' activities in the U.S., as would be construed by a reasonable jury, are sufficient to establish an offer for sale, which suggests it's not a legal issue. It's one for the jury. If you look at this Court's opinion in Shockley and MEMC, it seems consistent. I've found no Federal Circuit decision which states that whether a foreign entity that's offering for sale, selling, importing to the U.S. – I've never found a Federal Circuit case that says it is a jurisdictional issue. It appears, without stating as much, that the Federal Circuit has treated it as an element, not a jurisdiction requirement, but it hasn't come right out and said that, which is where I think this Court's opinion could provide guidance. The only case that I've seen where the topic of subject matter jurisdiction was discussed is the Electro case, which is also a Federal Circuit, 1994. That's 34F301038. In that case, the Federal Circuit's decision notes in passing that the district court stated that absent at least one sale in the U.S., it would dismiss the lawsuit because it would lack subject matter jurisdiction. There, the Federal Circuit quoted the district court, but the Federal Circuit didn't go on to agree or disagree with the district court's statement. It was an issue in the case, so I'm not sure that that's precedent at all. But in the spirit of telling you that I found the word subject matter jurisdiction, that's the case. So I think under Federal Circuit law, probably the better rule of law in view of the Supreme Court's decision is an element. It's not jurisdictional. I think under the Eighth Circuit, I did—the only case I found, and I'd be interested in what the Court found in the short time that we looked at it, the only case that we found that dealt with jurisdictional was Iverson v. Grant, 946F sub 1404. And again, this is kind of like the Electro case. The district court, in looking at the extraterritorial effect of the Copyright Act, held that it would lack subject matter jurisdiction over the Canadian publisher because there were no acts within the U.S. that took place. The Eighth Circuit affirmed on different grounds. So whether or not that's deemed precedent that the Eighth Circuit views the extraterritorial effect of the Copyright Act as being jurisdictional I think is questionable. I would also say that I think that, again, I can't imagine how we could have a rule of law that would be different for the Copyright Act than the Patent Act. Seemingly, Congress would have the same rule that if foreign entities are going to be deemed liable in the U.S., it's either going to be an element of the claim or it's going to be jurisdictional. I can't see why we would treat one different from the other. So you would treat them both the same way? Your Honor, I think you'd have to have some guidance from Congress. To the contrary, in Arbaugh, again, is the binding precedent on this court. And Arbaugh suggests at page 516 that if Congress didn't state it, it's an element, not subject matter jurisdiction. I think, again, there's wisdom from a judicial standpoint. The foreign defendant, as a practical matter, is going to have to come into this country to defend whether it's to say it's a lack of subject matter jurisdiction or whether it's an element of the claim. If a company improvidently sues a foreign company, they're going to have to come here regardless of how this court characterizes it. The only difference is at what point in the proceedings should that foreign entity have to raise it. And if it's not a subject matter jurisdiction issue, then the foreign entity would have to raise that issue sooner rather than later. And as a matter of judicial prudence, I think that makes sense, absent, again, in Arbaugh, some strong statement to the contrary by Congress. But does it affect subject matter jurisdiction at all? Is it just an element of proof that needs to be established by the plaintiff? To me, it's an element of proof that we need to establish, and there was substantial evidence. As the court may appreciate on this record, we submitted this issue to the jury. This was submitted to the jury. We weren't sure how to handle it, so at the jury instruction conference, we discussed this issue. The jury instructions state that the sales, offers for sales and importation, those are the three things that are in jury instructions 5 and 9 on the patent side. The instructions state that we have to show that there was a sale, offer for sale or importation, those are the three things in our jury instructions, in the United States. It's in there. There's no objection. That issue was discussed by them at the jury instruction conference. Similarly, if you look at jury instruction number 20 on the copyright side, again, we have distribution in the U.S. There was substantial evidence in the record. So if the court finds at this juncture, if the court finds at this juncture that this is not a subject matter jurisdiction issue, it's an element of cause of action, then I think all that's going to happen here on appeal, in my view, is that we're changing the standard from one of de novo to one of sufficiency of the evidence. And we've cited at the court at page 30 and 31 of our brief, the record is replete with admissions from their president that they sold, offered to sale, sell, and imported. That's from the record into this country. We also had the invoices or their sales records that showed this, and then we had evidence, of course, of the website. So we have admissions, and there was sufficient evidence for this jury to find that they offered for sale, that they sold, that they imported product into the U.S., and it would be, I would think, if it's an element of the cause of action, then a sufficiency of the evidence question versus just being reviewed de novo. What do you make of their argument that they didn't import it into the United States, they exported to the United States, and that that is a dispositive distinction? Well, I found no case that says it. I found foreign – there are foreign companies – there are cases where the foreign company was also the importer. There's no case that says just because you're the exporter you can't be the importer. I think there are cases, Your Honor, for example, if I'm Walmart and I'm in the U.S. and I buy a lot of foreign product, Walmart might be deemed in that instance to be the importer because they're buying it and they're reselling it. But they have a presence in the United States, and their argument is that this producer has no presence in the United States. All they do is advertise and accept payment in dollars, accept U.S. credit cards, all the points which they have made, which weigh, I think, quite strongly on establishing importation. At the same time, there is a line somewhere, is there not, between activities that do and do not impinge adequately upon the United States to be deemed importation? Well, I think that's – I think there are lines to be drawn, of course. In this particular case, what's undisputed is this is a Canadian company that had a website that was targeted at the U.S. It was in U.S. dollars. They had a toll-free number. There's no dispute on this record that this company is the one solely responsible for targeting the U.S., for directing the shipment into the U.S. The only distinction we have here as to why they're not an importer is because it was on FOB terms. But that sounds to me like inducement, but there was no account for inducement, was there? Well, we had inducement in our complaint. We didn't proceed at trial because we thought we had sale, offer for sale and importation. Those are the three grounds upon which we proceeded. Certainly, if these issues had been raised and we thought there was a serious issue, this all happened during trial. If this had been – and this is, again, why it shouldn't be subject matter of jurisdiction – if these issues had been raised timely, we probably would have moved on to inducement. But going into this, there was no dispute. They never disputed. Look at their trial brief. It's a record. You can look at the statement of uncontested facts between the parties. Going into this trial, there was no dispute about the offer for sale or sale. So as trial counsel, we went in knowing what the issues were. They only changed on the third day of trial, and we didn't move on to inducement. There's a clear record of inducement here. They had knowledge of the patent. That was a given. We've proven that, so was there inducement? Sure. But as to the importation issue, they are the importer. There's no one else that – the only other party you can say are the individual customers are the importers here, which wouldn't make a lot of sense. I don't think the individual customers are thinking themselves, I've got importation issues. I'd better check with legal counsel to make sure that I can import product. Whereas if you're Walmart, of course, if I'm importing product, I've got legal counsel. I'm checking into whether I'm legally importing product into the US. I think they are an importer here. I don't think that you can say in every case whether there's importation or not. I think it's a fact-specific inquiry. But I also think the district court judge, I think, thought – and we're guessing at what the district court judge thought – but I think that what the district court judge saw is this was a party that clearly sent this into the US. The customers are not the ones that were really sending product into the US. If you look at MEMC, Shockley, Rotec, in any of these cases, there was a middleman. And it's the middleman that's being held liable. Where the courts are drawing the distinction is when patent owners are trying to go and get a Chinese manufacturer that sold its product to somebody else overseas. And it was that somebody else that brought the product into the US. There's no case where a company had a business in Canada, had a website that was undisputed to be directed at other parts of the world. Maybe, but the bulk of its sales, they admitted, were directed at the US in US dollars with a toll-free number. Does it make any difference if the title of the property passes in the US or in Canada? Under this court's authority, the answer is no. I mean, in 3D Systems, this court specifically – well, it didn't. 3D Systems, in fairness, is a personal jurisdiction case. But what it says is for purposes of defining offers for sale under 271A, what this court says in 3D Systems and Phillips is we're going to – we're not going to look at FOB. I mean, in 3D, on the invoice, it said this is not an offer for sale. You're talking about North American Phillips, not Phillips itself, right? 3D Systems is the one in which the invoice or the quote sheet says this is not an offer for sale. North American Phillips is where it was FOB. And this court in North American Phillips said, look, the product wound up in Illinois. But that was for personal jurisdiction. That was for personal jurisdiction. But this court in RoadTech has cited 3D and North American Phillips as being relevant to interpreting offer for sale under 271A. And while there's been some suggestion that the standard might be different for personal jurisdiction or whether a defendant committed a tort in the US, offer for sale under 271A should be offer for sale under 271A. I'm not sure why that definition would vary depending on whether it's personal jurisdiction or whether it's liability. So it doesn't matter where the title passes? I wouldn't think so. It's either an offer for sale or it's not. And under this court's authority, what they've looked for is offer for sale is was there a description of the product and a price. Here there was a description of the product and the price. That's offer for sale on the website. They sold the product. If you look to Phillips, the court said it doesn't matter that it's FOB. The product wound up in Illinois. That's where the tort is. In this case, there's no dispute that 230,000 products were sold into this country. And that's under North American Phillips. The product wound up here. Who's responsible? There's no dispute that his client's responsible. And as a practical matter, if this weren't the law, if the court were to go this far in this case to find that there's not offer for sale, sale or importation, all somebody has to do to avoid infringement, this would be very serious for our country. Our clientele have – even our big U.S. companies that we represent have offices in the U.S. and abroad. All they have to do is set up – they buy from the foreign manufacturer, which is where a lot of manufacturing takes place these days. Buy it by their foreign company. Sell it into the U.S. on FOB terms. And now the only remedy that a patent owner has is against the end customers. Well, how would we figure out who the end customers are? We couldn't know. We can't get that discovered. But say that we could figure that out. We'd have to file 1,000 lawsuits instead of one to bring that infringement claim. There is no – Keep a lot of lawyers happy. Excuse me? Keep a lot of lawyers happy doing that. Yeah, well, I guess it would be good for me. Maybe I should be advocating for this. But there's no case. In all of the cases, MEMC, the Pfizer case, Shockley, there was a middleman. And what the Federal Circuit has said is, look, the foreign manufacturer, unless it's under inducement, can't be held liable. But there's plenty of cases from this court where the middleman, which is what they are, was liable. Because what we're ultimately trying to figure out is who's the one that's getting us the product in the U.S. that's causing this problem. The foreign manufacturer might be in the chain of title, but that's not enough. Who's the one that shipped it in? Who's the one that offered it for sale? Who sold it? And it was them. It wasn't the customers. Would it make any difference if the Chinese manufacturer shipped directly to the U.S. upon their order? Yes, if the Chinese manufacturer ships directly to the U.S., assuming that it offered for sale or imported, yeah, it would be the importer. But, yeah, I think they could be either offer for sale, sale, or importation. But the cases where there's distinction, that's not being raised in the case law because the distinction has been foreign manufacturer sells to a middleman who then imports. And that's where the breakdown of the cases have been. I've seen no case where the middleman, such as them, who there's no dispute on the record, is the one that put up the website, consummated the sale, and imported it. I've seen no case where that person's not liable. Okay. Any more questions? Any more questions? Okay. Thank you. Thank you. Mr. Brownlee? I asked the court to look at the Cybiotronics case that both sides argued at length. That case stands for several propositions. Counsel has indicated he doesn't know of any such case. This is such a case. This is a case that looks at the Court of Appeals precedents, including Rotec, and concludes, among other things, that the Rotec case has instructed them that they are to consider offers for sale in the context of a typical commercial offer. And it seems to me like that ought to apply as well to importation. Rotec also indicates that the court – and I'm reading directly – the court is wholly unpersuaded by plaintiff's argument that because Smoothline is the exporter from Hong Kong, it must also be the importer into the United States. But there was no importation into the United States in Rotec, and this is why I keep wondering what to make of the reliance on it. My point is simply that there's a difference between the words export and import, that Congress knew how to say the difference between the two. The statute establishing importation as now a new element, a new cause of action that can be proven, specifically indicates that that covers importation. Congress knew how to say not only importation but exportation. There is a difference, it seems to me, a significant difference. You can't by simply ipso facto say we're the importer, we are the middleman. We're not. We are a Canadian resident. He talks about 230,000 sales into the United States. That is not true. That is a gross exaggeration of the record. My client testified at trial that he kept track of sales by dollars, U.S. dollars and Canadian dollars. If the sales were in Canada, they were in Canadian dollars. If they were anyplace else in the world, they were in U.S. dollars because that's the universal method of exchange. So he said clearly that there were sales made into the United States. He didn't say the bulk of them. He didn't say many of them. He said there were undoubtedly sales made into the United States, and there were. We're not denying that. But we're also laying great weight on the fact that the website itself says we do not offer e-commerce. You cannot offer it off this website. You must call Canada. Now, let me just conclude by saying that the idea that this was raised on the third day of trial gets more mileage than it should. We denied that there had been sales or offers to sale in the complaint. It was their burden to show it. The reason we're talking about importation is because there was no evidence of any offers for sale or sales other than the facts that we're talking about here. They tried to argue that, well, having this website, even though it was an information-only website, was an offer for sale. They tried to argue that there was somehow a sale that we had actually consummated in the United States. In fact, if you read their complaint, they talk in terms of sales in the United States and in Canada and in this judicial district talking about St. Louis. You need to wrap it up. We're over time. Well, the rub here is that both importation and that importation is both a jurisdictional requirement of the statute as well as it's an element of the cause of action. And let me just say that the Supreme Court gave us advice in this, in the hospital holding case, where it noted that the Court of Appeals had dismissed on one ground saying they weren't sure if it was this one or the other one. The Supreme Court said it, too, would treat the dismissal as made under Rule 12b-6 but noted it would have made the same analysis had it been under Rule 12b-1. Is that in conflict with Arbaugh? Is it in conflict with Arbaugh? Arbaugh is a tough case, Your Honor. It's a case where obviously the issue first comes up after trial when there's been no allegation that there were less than the 15 employees that were mandated by Title VII. And so Justice Ginsburg, I think, says that under these circumstances, in this case, it almost wouldn't be fair to go ahead and allege this is other than a failure to prove an inspection element of their cause of action. Thank you, Mr. Bundy. Thank you. And thank you, Mr. Telcher. The case is taken under submission.